

**FILED**

December 04, 2023 09:32 AM
SX-2018-CV-00311
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
*******

| | | |
|---|---|---|
| FAYE LIBURD AS PERSONAL REPRESENTATIVE Of THE ESTATE OF JASON JULIUS, | ) ) ) ) | |
| Plaintiff, | ) ) ) | CASE NO. SX-2018-CV-00311 |
| vs. | ) ) ) | |
| VIRGIN ISLANDS WATER AND POWER AUTHORITY, | ) ) ) | **Cite as 2023 VI Super 76** |
| Defendants | ) ) ) | |

## MEMORANDUM OPINION

¶1.     Before the Court is Plaintiff Faye Liburd's, in her capacity as personal representative of the Estate of Jason Julius, ("Liburd") Motion to Amend the Second Amended Complaint, filed on November 2, 2022. Defendant Virgin Islands Water and Power Authority ("WAPA") opposed the motion and filed its Opposition to Plaintiff's Third Motion to Amend the Complaint on November 23, 2022. Plaintiff filed a reply on January 17, 2023. Also pending before the Court is WAPA's Motion to Deny as Moot Plaintiff's Third Motion to Amend the Complaint filed on November 8, 2023. Defendant filed an opposition to WAPA's motion on November 29, 2023. For the reasons contained herein, the Court will grant Liburd's motion to file a third amended complaint and deny WAPA's motion requesting that the Court deny as moot Liburd's third motion to amend the complaint.

## 1. BACKGROUND

¶2.     The initial complaint in this matter was filed on August 30, 2018.[1] Plaintiff has moved the Court to file a third amended complaint.[2] In the Second Amended Complaint, Plaintiff alleges that

---

[1] This matter was originally filed in the St. Croix District in August 2018. On November 5, 2018, WAPA filed a motion to transfer the case to the St. Thomas/St. John Division of the Superior Court. By order dated February 7, 2020, this matter was transferred from the Division of St. Croix to the Division of St. Thomas/ St. John.

[2] In the original complaint, Plaintiff's name was stated as "Faye Liburd-Julius," and the complaint sought to recover damages for Julius' estate and heirs, who were identified as Faye Liburd-Julius and Julius' two children. On December 10, 2020, the Court granted Plaintiff's motion to amend the complaint to correct Plaintiff's name and to clarify the claims asserted. The First Amended Complaint substitutes "Faye Liburd" for "Faye Liburd- Julius" and Julius' heirs

on or about September 2011, Jason Julius ("Julius"), who at the time was an employee of WAPA, was working on exposed energized lines on 10th Street Sugar Estate when he was electrocuted and died as a result of the WAPA's "willful acts of gross negligence."[3] Liburd claims that WAPA, among other things, failed to provide Julius with the proper protective resources needed to perform hotline work safely, implement proper protocols, train employees on his team, have the energized lines properly insulated with protective material, and ensure that Julius was a safe distance from the hotlines.[4] Liburd also alleges that WAPA tried to suppress the reports of the investigation surrounding Julius' death and attempted to re-write the reports to "hide its gross negligence."[5]

¶3.     In her third motion to amend the complaint, Plaintiff requests that the Court grant her permission to add two additional parties - Clinton Hedrington ("Hedrington") and Niel Vanterpool ("Vanterpool"), two former WAPA executives. Liburd seeks to assert claims for negligence and gross negligence against Hedrington and Vanterpool. At the time of the incident that is the subject of the complaint, Hedrington was the Chief Operating Officer, and Vanterpool was the Transmission and Distribution Director. Liburd also seeks to add allegations regarding events discovered during discovery.  Liburd notes that it was not until September 16, 2021, that she received the December 6, 2017, investigative report ("Investigative Report") prepared by WAPA employees, which implicated Hedrington and Vanterpool as contributors to the incident.

¶4.     WAPA opposes Liburd's motion to amend on the grounds of Plaintiff's unjustifiable and significant delay in filing the motion. Coupled with its contention of undue delay, WAPA also claims that it, along with Hedrington and Vanterpool, will suffer "significant prejudice" if the motion to amend was granted due to additional costs and unnecessary delays in the proceedings. To support its position, WAPA adds that the motion to amend the complaint was filed days after

---

are listed as his two children only. A second count was added to recover damages for Faye Liburd personally. After WAPA filed a motion for judgment on the pleading on December 28, 2020, the parties stipulated in February 2020 to the voluntary dismissal of the personal claims of Faye Liburd. A Second Amended complaint – a single-count complaint for damages on behalf of Julius' Estate and his two children - was filed on February 23, 2021. The personal claims of Faye Liburd were excised from the complaint.

[3] Second Amended Compl. at ¶¶ 5 and 6.

[4] Second Amended Compl. at ¶ 7.

[5] Second Amended Compl. at ¶¶ 8 and 10.

the expiration of the fact discovery deadline,[6] over four years after filing the original complaint, nine months after Hedrington and Vanterpool were deposed and over a year after Liburd has been in possession of the information that she claims she relied on to amend the complaint.

¶5.     On September 5, 2023, Plaintiff filed a new complaint, *Faye Liburd, as Personal Representative of the Estate of Jason Julius v. Clinton Hedrington and Neil Vanterpool*, Civil No. ST-2023-CV-00284 (the "Second Lawsuit") against Hedrington and Vanterpool, alleging virtually identical claims and allegations in the proposed third amended complaint. Following the filing of the Second Lawsuit, WAPA filed on November 8, 2023, a motion to deny as moot Plaintiff's third motion to amend the complaint. WAPA contends that the Second Lawsuit was filed as an "end-run to neutralize any future ruling by this Court." In her Opposition to WAPA's motion, Liburd claims that she filed the protective Second Lawsuit out of an abundance of caution since the Court had not ruled on the pending motion to amend the complaint.[7] On November 29, 2023, Vanterpool and Hedrington filed their answer and affirmative defenses in the Second Lawsuit.

## 2.  **LEGAL STANDARD**

¶6.     The procedural rule that governs the ability of a plaintiff to amend a complaint is V.I. R. Civ. P. 15. Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." V.I. R. CIV. P. 15(a)(1). Once the 21-day period has expired, a party's complaint may only be amended with the opposing party's written consent or with permission from the court. V.I. R. CIV. P. 15(a)(2). It is well established that a "court should freely give leave to amend a complaint when justice so requires." V.I. R. Civ. P. 15(a)(2). *Basic Services, Inc. v. Government of the Virgin Islands*, 71 V.I. 652, 666 (V.I. 2019). *Davis v. UHP Projects, Inc.*, 74 V.I. 525, 536-537 (V.I. 2021). Under Rule 15, a court may permit a party to amend its pleading at any time, even after the close of discovery or during trial. *Davis,*

---

[6] When Liburd filed her motion to amend the complaint, the parties were operating under the Fourth Amended Scheduling Order, which had a fact discovery deadline of October 28, 2022. The parties are currently operating under the Seventh Amended Scheduling Order.

[7] At the November 8, 2023, status conference, Plaintiff explained that she had to file the Second Lawsuit to avoid the expiration of the statute of limitations.

74 V.I. at 538. However, granting or denying a motion to amend a complaint is "vested in the discretion of the Superior Court." *Anthony v. Indep. Ins. Advisors, Inc.*, 56 V.I. 516, 534 (V.I. 2012).

¶7.     A court may justifiably deny a party's motion to amend a pleading and depart from the settled paradigm that leave to amend should be freely given due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Basic Services*, 74 V.I. at 536. Denying a motion to amend solely on the basis of delay is not justified. *Davis*, 74 V.I. at 538 (reiterating that "unreasonable delay, without more, is not sufficient grounds to deny leave to amend"); *Toussaint v. Stewart*, 67 V.I. 931, 946 (V.I. 2017) (holding that the "passage of time alone is not undue delay"); *Hartzog v. United Corp.*, 2011 V.I. LEXIS 95, *6 (V.I. Super. Ct. Sept 7, 2011)(noting "delay is an insufficient ground to deny leave to amend"). Rather, "prejudice to the opposing party or the trial court is the most important factor in determining whether leave to amend should be freely given." *Davis*, 74 V.I. at 537.

### 3.    DISCUSSION & ANALYSIS

**A. Liburd's Motion to Amend the Complaint**

#### *(i)    Undue Delay*

¶8.     In determining whether a delay in amending a complaint is undue, a court must focus on the plaintiff's reasons for not amending sooner. In its opposition to the motion to amend the complaint, WAPA argues that Liburd waited until after the expiration of the fact discovery deadline to file the third motion to amend the complaint. WAPA further claims that it provided Plaintiff with the Investigative Report on September 16, 2021; Hedrington was deposed on September 24, 2021, and Vanterpool was deposed on February 23, 2022. WAPA surmises that Liburd has not presented any "plausible reason" for her eight-month delay in moving to amend the Complaint.

¶9.     Liburd claims that there has been no undue delay on her part. To justify the request to amend the complaint at this phase of the litigation, Liburd argues that there was nothing in

WAPA's Rule 26 disclosures[8] to suggest that Hedrington and Vanterpool were personally negligent. And it was only after commencing the depositions of WAPA's witnesses in September 2021 and when WAPA produced documents it had not previously disclosed that the potential liability of Hedrington and Vanterpool surfaced. Liburd informs the Court that it was not until September 16, 2021, the same day of Hedrington's scheduled deposition, that WAPA produced the Investigative Report. Because of its last eleventh-hour disclosure, Hedrington's deposition was rescheduled to September 24, 2021, and Vanterpool could not be deposed until February 23, 2022, due to scheduling conflicts.[9] Plaintiff adds that the depositions of the investigating team members were not completed until August 10, 2022, and a witness, who was present for the discussions between Vanterpool and Hedrington about working hot on the day of the accident, was deposed on August 20, 2022.

¶10. Liburd explains that during the depositions, it was revealed that on September 25, 2017, within two weeks of Julius' death, an investigation was commissioned by Julio Rhymer ("Rhymer"), the executive director/CEO of WAPA at the time. Rhymer assigned a team of WAPA employees to investigate the cause of the accident that led to Julius' death and identify any deficiencies that contributed to the incident. On or about December 6, 2017, the team of WAPA employees investigating the incident submitted its report to Hedrington, who at that time was the Acting Director/CEO of WAPA, implicating Hedrington and Vanterpool. According to Liburd, the Investigative Report she received on September 16, 2021, and the subsequent depositions revealed some crucial facts. Liburd explains that she learned that Hedrington and Vanterpool were on the scene and condoned the decision for Julius to work hot. Hedrington instructed Julius' direct supervisor within the line department to leave the scene and go to another location, which resulted in Julius being unsupervised. Hedrington and Vanterpool, the two most senior employees present, were responsible for controlling the job site, but they were not watching or supervising Julius during the incident. Vanterpool was busy on his cell phone while Hedrington was in an air-

---

[8] The first Scheduling Order was entered on September 29, 2020, *nunc pro tunc* to June 22, 2020. Plaintiff filed her voluntary disclosures pursuant to V.I. R. Civ. P. 26 on September 24, 2020, and WAPA filed its Rule 26 disclosures on September 25, 2020. Little to no discovery was conducted in this matter for nearly two years.

[9] Attached to Liburd's Reply is an email, which Liburd claims is the email that was sent to Liburd's counsel on September 16, 2022, with the Investigative Report attached. The email is time-stamped at 9:50 a.m. Based on the Notice of Deposition filed with the Court, Hedrington's deposition was scheduled for September 16, 2021, at 10:00. Hence, it appears that the Investigative Report was turned over 10 minutes before the deposition.

conditioned vehicle looking at paperwork. Liburd claims that she also learned that Hedrington rejected the Investigative Report on or about December 21, 2017, and on January 30, 2018, reconstituted another team of WAPA employees to conduct a new investigation. According to Liburd, the results of the "reconvened" investigative team have not been produced. Liburd further claims that she learned that WAPA's Safety manual, safe work practices, and hotline training were not followed or enforced and that insulation, which would have prevented the incident, was not placed on the energized lines or equipment.

¶11. Less than three months after the August 20, 2022, deposition, Liburd filed her motion to amend the complaint to add Hedrington and Vanterpool as parties for their individual wrongdoing. In brief, Liburd contends that moving to amend the complaint within three months of learning facts to support her claims does not constitute undue delay in amending the complaint. Considering the specific facts and circumstances of this case, the Court finds that Liburd's reasons for not moving to amend sooner to be reasonable. Only after receiving the Investigative Report on September 16, 2021—produced literally minutes before Hedrington's scheduled deposition—did Liburd apparently have some indication of the exact nature of Hedrington and Vanterpool's involvement. Significantly, WAPA does not dispute this fact. Depositions unearthing the new allegations and the actions or inactions of the two WAPA executives at the scene of the incident were ongoing until August 20, 2022. Plaintiff maintains that it was only after assessing all the facts obtained from the depositions and documents received on and after September 16, 2021, that she was able to conclude that sufficient factual support exists to add the two new defendants and assert claims of gross negligence and negligence against them. It was not unreasonable for Liburd to wait until after the taking of Hedrington, Vanterpool, and members of the investigation team's depositions to move to amend the complaint. The Court finds no improper motive or undue delay concerning the timing of the filing of Liburd's motion to amend.

### (ii)    Prejudice

¶12. In deciding whether to grant or deny a motion to amend a complaint, the Court must determine whether the nonmoving party would be prejudiced by allowing the complaint to be amended. "Prejudice to the non-moving party is the touchstone for denying a motion to amend a pleading." *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 2017 LEXIS 73, *3 (V.I.

Super. Ct. May 19, 2017)(citations and internal quotations omitted). In determining whether an amendment would be prejudicial, the court considers whether it would place an unfair burden on the opposing party or imperil the non-moving party's opportunity to present witnesses and other evidence at trial, which it would have presented had the amendments been timely. *Davis*, 74 V.I. 525 at 537 ("to constitute prejudice, the amendment must compromise the defendant's ability to present its case"); *Bermudez* v. *Virgin Islands Port Authority*, 76 V.I. 1010, 110 (V.I. Super. Ct. March 15, 2022). Whether the amendment will require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute are also factors courts consider in deciding whether the non-moving party will be prejudiced. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

¶13. WAPA has not presented any compelling arguments to demonstrate that granting the amendment would jeopardize its ability to present evidence at trial despite urging the Court to find undue prejudice. WAPA claims that there is a "risk of prejudice" as the amendment may require the reopening of discovery and delay the litigation. However, WAPA has not provided any information about any additional factual discovery that the Defendants will be deprived of. Moreover, it has not explained why the fact discovery conducted so far would be insufficient for WAPA, Vanterpool, and Hedrington to defend themselves against the claims of negligence and gross negligence brought against them. Most of the discovery has already been conducted, and the defendants to be added have actively participated in the discovery. Hedrington and Vanterpool have been involved in this litigation since its inception. Vanterpool executed WAPA's responses to interrogatories, and Vanterpool and Hedrington were identified as individuals who assisted in compiling information responsive to the interrogatories. Moreover, both Hedrington and Vanterpool have been deposed. Both were present at the scene when Julius was electrocuted and should have intimate knowledge of the findings of the Investigative Report. As former executives at WAPA, they should know WAPA's policies, procedures, and protocols. Both are likely to be critical witnesses in WAPA's defense. Although fact discovery is substantially complete and the parties are now in the expert discovery phase, no trial date has been set for this matter, and, therefore, WAPA, Vanterpool, and Hedrington will have the opportunity to adequately defend the claims brought against them. Even if some additional discovery is required, it does not appear that

such discovery will significantly expand the scope of this action to unduly prejudice the Defendants. To the extent that Hedrington and Vanterpool need to conduct some discovery, the Court will permit such limited discovery. Hence, Hedrington and Vanterpool will suffer no prejudice. Just because an amendment would require additional discovery does not necessarily mean it would cause prejudice. *Davis*, 74 V.I. at 537.

¶14. WAPA claims that it would be prejudiced by having to file an answer to the "now-lengthier Third Amended Complaint." Merely having to file an answer to the new complaint is not prejudice. Every amendment to a complaint requires the opposing party to file an answer (or motion to dismiss), irrespective of when leave to amend is granted. The fact that the answer must be filed after the close of discovery or before the close of discovery does not make it any more burdensome. The cost and time to file an answer will not cause WAPA to expend significant resources, and a short delay in the case for the defendants to file an answer or conduct limited discovery does not justify denying a motion to amend the complaint. Any delay must be juxtaposed against efficiency. Litigating the Second Lawsuit independently of this action will not save WAPA, Hedrington, or Vanterpool any more time or resources. This case against WAPA and the new case against Hedrington and Vanterpool are based on the same incident and would require the presentation of the same evidence and elicitation of testimony from the same witnesses. The facts, arguments, and theories used to undermine Liburd's claims of negligence and gross negligence would be the same, for the most part, whether advanced by WAPA, Hedrington, or Vanterpool in this action or the Second Lawsuit. Even though it is not a party, WAPA would still play some role in the litigation of the Second Liburd Complaint. Significantly, WAPA does not argue that the claims against Vanterpool and Hedrington lack merit. Hence, justice requires that the Court grant Liburd's motion to file a third amended complaint.

¶15. WAPA argues that Hedrington and Vanterpool could have had almost a year head start in defending the claims had Liburd timely filed the amended complaint when she received the Investigative Report rather than waiting until after the close of discovery. Although a party should amend its pleading as early as possible in the litigation, the completion of fact discovery does not constrain the Court from granting a motion to amend the complaint. *See Theodule v. Ass'n of St. C Condo. Owners*, 2016 V.I. LEXIS 223, *3-4 (V.I. Super. Ct. Dec. 16, 2016) (permitting

amendment of the complaint after discovery was closed); *Davis* 74 V.I. at 538; (reversing denial of the motion to amend complaint even though the litigation had been pending for 14 years, but where the parties remained engaged in motion practice and other pre-trial matters at the time the motion had been filed, with trial not imminent.) *Bermudez*, 76 V.I. at 110 (granting motion to amend after factual discovery closed but before the deadlines for expert discovery and dispositive motions passed). Moreover, WAPA bears some responsibility for the delays in this matter. Both Vanterpool and Hedrington were executive officers in WAPA when WAPA served its Rule 26 Disclosures and when WAPA initially responded to Plaintiff's written discovery. They assisted with the responses to the written discovery. At that time, they both knew of the existence of the Investigative Report, yet it was not disclosed to Liburd. WAPA waited until minutes before the deposition of Hedrington and a year after the exchange of Rule 26 disclosures to turn over the Investigative Report – a document it had in its possession since 2017 and which it obviously knew was a critical piece of discovery in this litigation. It is circuitous for WAPA to delay the production of the Investigative Report that it should have produced during Rule 26 disclosures and then claim that Liburd's motion to amend, which is based on information obtained from the Investigative Report, is untimely as it comes after the close of discovery.

**B. WAPA's Motion to Deny Motion to Amend Complaint as Moot**

¶16. WAPA filed the Second Lawsuit against Hedrington and Vanterpool on September 5, 2023, and the case is assigned to the undersigned judicial officer. In light of the filing of the Second Lawsuit, WAPA has asked the Court to deny Liburd's motion to amend the complaint as moot. WAPA claims that granting the motion to amend would lead to redundant litigation and waste of the Court and the parties' resources. WAPA also claims that many of the allegations supporting the claims against Hedrington and Vanterpool in the Second Lawsuit are verbatim reproductions of the same allegations as in this case. The Court agrees that duplicative litigation does not foster judicial economy. It is for some of the very reasons articulated by WAPA that granting the motion to amend the complaint is warranted. By adding Hedrington and Vanterpool as parties to this case, the Court can avoid the dual litigation of virtually identical cases before it. It also prevents the parties from having to start the litigation anew. It enables all the claims and

issues surrounding the same facts regarding the same parties to be addressed at the same time by the same Judge, thereby avoiding duplication of effort and reducing the expense of litigation.[10]

¶17. The prior pending doctrine referenced by WAPA in its motion cannot be applied to justify the denial of the motion to amend. A key tenant of the prior pending doctrine is two judges with jurisdiction handling virtually identical cases. That is not the case in this instance, as the two Liburd cases are assigned to the same Judge, thus eliminating the possibility of inconsistent results. *See In re Limetree Bay Commer. Litig.*, 2023 V.I. LEXIS 45, *23 (V.I. Super. Ct. November 2, 2023). Also, the prior action pending doctrine requires that the judge who has possession of the subject first must decide it. *Id.* Liburd filed the Second Lawsuit nearly a year after filing the motion to amend the complaint to add Hedrington and Vanterpool. Had the Court ruled on the motion to amend sooner, there would have been no need to file the Second Lawsuit. Liburd claims that she only filed the Second Lawsuit out of an abundance of caution as the Court had not ruled on the motion to amend pending in this case. As such, in the interest of fairness and the efficient administration of justice, the Court will grant Liburd's motion to amend the complaint. Since the cases, for the most part, are duplicative of each other, the Court will also consolidate the cases.

## 4. CONCLUSION

¶18. The Court finds that Liburd did not unduly delay in seeking to add Vanterpool and Hedrington as parties. WAPA failed to show that granting the amendment would jeopardize its ability to adequately defend the claims against it. The fact that WAPA will be required to file an answer to the third amended complaint or even conduct some limited additional discovery does not justify the denial of the motion to amend. The Court further finds that granting the amendment would be more efficient, avoid unnecessary duplication of efforts, and conserve the parties and the Court's time and resources. Certainly, conducting two trials before the same Judge regarding the same incident, utilizing the same documents, and eliciting the same testimony from the same fact and expert witnesses would be duplicative and amount to an inefficient use of judicial resources. Rather than permitting the two virtually identical cases to be litigated on separate tracks, the

---

[10] Based on the recent filings in the Second Lawsuit, the same counsel that represents WAPA in this case also represents Hedrington and Vanterpool and, presumably, will represent them in this case. This ensures continuity and reduces the delay that may occur with Vanterpool and Hedrington joining the suit as defendants, as it avoids the situation where new counsel has to get up to speed with a case that has been pending for over five years.

prudent course is to grant Liburd's pending motion to amend the complaint and consolidate the cases pursuant to V.I. R. Civ. P 42(a)(2). An appropriate Order consistent with this Memorandum follows.

Dated: December 4, 2023

**Hon. Carol Thomas-Jacobs**
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: 

Latoya Camacho
Court Clerk Supervisor 12/5/2023